UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARITY BAILEY,

       Plaintiff,                                      Hon. Paul L. Maloney

v.                                                 Case No. 1:08-CV-320

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 35 years of age at the time of the ALJ's decision. (Tr. 24, 55). She successfully completed high school and worked previously as an assembler, machine operator, cashier, child care provider, and inspector. (Tr. 87, 122-28).

Plaintiff applied for benefits on May 1, 2006, alleging that she had been disabled since October 10, 2001, due to back problems, bi-polar disorder, anxiety attacks, high blood pressure, and migraines. (Tr. 55-57, 86). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-54). On October 16, 2006, Plaintiff appeared before ALJ William King, Jr., with testimony being offered by Plaintiff and vocational expert, Dr. James Lozer. (Tr. 302-50). In a written decision dated December 14, 2006, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 12-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

On November 11, 2001, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed bilateral spondylolysis at L5 with spondylolisthesis of L5 over S1. (Tr. 228). There was no evidence, however, of compression deformity, signal abnormality, herniation, or "significant" stenosis. (Tr. 228).

Treatment notes dated November 15, 2001, indicate that Plaintiff's back pain "is better in the morning, but less improved at night." (Tr. 226). Plaintiff reported that she was taking Tylenol for her back pain. (Tr. 226). Plaintiff was instructed to exercise and lose weight. (Tr. 226).

On December 26, 2001, Plaintiff reported that she had experienced "more flexibility and strength in her abdomen and back" since recently beginning physical therapy. (Tr. 225). Plaintiff was instructed to continue participating in physical therapy. (Tr. 225).

On January 21, 2002, Plaintiff reported that she was presently working a job that required her to repetitively lift 28 pounds. (Tr. 224). Plaintiff indicated that she "needs some restrictions" because she could no longer work that job. (Tr. 224). Plaintiff reported that she was not taking any medications "routinely" and was regularly performing her home exercises. (Tr. 224). The examiner indicated that she would "give [Plaintiff] restrictions with lifting, bending, twisting and repetition," but did not indicate what such restrictions would be. (Tr. 224).

On March 8, 2002, Plaintiff was examined by Dr. Mark Moulton. (Tr. 248-49). Plaintiff reported that she was experiencing pain in her lower back which radiated into her left lower extremity. (Tr. 248). Plaintiff reported that her back pain worsened when working her previous job which required her to lift 14 pound items "700 to 800 times throughout the day." (Tr. 248). Plaintiff ambulated "comfortably" and was able to heel/toe walk. (Tr. 248-49). Straight leg raising was

negative and Plaintiff exhibited 5/5 strength. (Tr. 249). Babinski test was negative and Plaintiff exhibited "normal sensation in both lower extremities." (Tr. 249). X-rays of Plaintiff's back revealed spondylolisthesis at L5-S1 and spondylosis at L4-5. (Tr. 249). The doctor indicated that Plaintiff may benefit from a nerve root injection, but also instructed Plaintiff to lose weight and participate in physical therapy. (Tr. 249).

On March 25, 2002, Plaintiff received a nerve root injection. (Tr. 159). On April 5, 2002, Plaintiff reported that she experienced "good" pain relief following her injection. (Tr. 245). Dr. Moulton reiterated that it "would be very helpful" if Plaintiff could lose weight. (Tr. 245).

On July 5, 2002, Dr. Moulton reported that Plaintiff "has made significant strides" toward losing weight and that her pain was "improved." (Tr. 245).

On October 18, 2002, Plaintiff reported that she was experiencing "significant" back pain which "waxes and wanes." (Tr. 241). Dr. Moulton modified Plaintiff's medication regimen and instructed Plaintiff to return for a follow-up examination in six months. (Tr. 241).

On March 3, 2006, Plaintiff was taken to the emergency room by her husband because she "has not been acting appropriately." (Tr. 162-69). Plaintiff's husband reported that Plaintiff "has had a lot of paranoia" and made several "abnormal" comments. (Tr. 162). Plaintiff reported that she smokes marijuana daily and thought that she "had some marijuana with a chemical laced in it." (Tr. 163, 184). Plaintiff's affect was "somewhat flat," but she did "not display obvious paranoia." (Tr. 163). Plaintiff denied any suicidal thoughts. (Tr. 163). A CT scan of Plaintiff's head was "negative." (Tr. 170). Plaintiff was diagnosed with bipolar disorder, manic phase and her GAF score was rated as 50. (Tr. 172). Treatment notes dated May 10, 2006, indicate that Plaintiff

was also diagnosed with canabis dependence, in early partial remission. (Tr. 184). Her GAF score was rated as 53. (Tr. 184).

On March 29, 2006, Plaintiff was examined by Dr. Virgilio Vasquez. (Tr. 199-201). Plaintiff reported that she was experiencing angry outbursts, anxiety, mood swings, difficulty concentrating, worry, and panic attacks. (Tr. 199). Plaintiff reported that her paranoia had "subsided" and the results of a mental status examination were unremarkable. (Tr. 200). Plaintiff was diagnosed with bipolar I disorder, depressed phase. (Tr. 200). Her GAF score was rated as "about 46." (Tr. 200). Dr. Vasquez adjusted Plaintiff's medication. (Tr. 200).

During an April 17, 2006 examination, Plaintiff was advised to stop smoking marijuana, but Plaintiff responded that she was "not ready" to do so. (Tr. 189).

On May 10, 2006, Plaintiff was examined by Dr. Vasquez. (Tr. 268). Plaintiff reported that "she has not been compliant in taking her medication." (Tr. 268). The results of a mental status examination were unremarkable. (Tr. 268).

On June 25, 2006, Joe DeLoach completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 204-17). Determining that Plaintiff suffered from bipolar disorder and generalized anxiety disorder, DeLoach concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 205-13). DeLoach determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 214). Specifically, DeLoach concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of decompensation. (Tr. 214).

DeLoach also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 218-20). Plaintiff's abilities were characterized as "moderately limited" in ten categories. With respect to the remaining ten categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 218-19). DeLoach concluded that Plaintiff was capable of performing "simple tasks on a sustained basis." (Tr. 220).

On September 22, 2006, Plaintiff was examined by Dr. Vasquez. (Tr. 266). Plaintiff reported that she was sleeping better and that she was experiencing no side effects from her medication. (Tr. 266). Plaintiff exhibited "mild depression," but the results of a mental status examination were otherwise unremarkable. (Tr. 266).

On September 23, 2006, Plaintiff completed a report regarding her activities. (Tr. 141-46). Plaintiff reported that she helps her children get ready for school, cooks, shops, reads, watches television, and attends sporting activities. (Tr. 141-44). Plaintiff reported that she also enjoys cake decorating. (Tr. 141).

At the administrative hearing, Plaintiff testified that she experiences severe back pain, which she rated as 9 (on a scale of 1-10). (Tr. 316). When asked how often she took her pain medication, Plaintiff responded that she "don't take it very often." (Tr. 318). Specifically, Plaintiff testified that she "might take it once [a] week, if that." (Tr. 318). Plaintiff reported that she took her medication so infrequently because it only "slightly" improved her pain. (Tr. 318-19). Plaintiff testified, however, that she never informed her doctor that her medication was not working. (Tr. 319-20). Plaintiff further reported that she smoked marijuana several times a week because it

7

"helps" her pain. (Tr. 320). With respect to her bi-polar disorder, Plaintiff testified that her medication helped her condition. (Tr. 321-22).

Plaintiff testified that she can walk "maybe a block and a half to two blocks." (Tr. 326). She reported that she can sit for "maybe an hour." (Tr. 326). Plaintiff acknowledged, however, that if permitted to sit or stand at will she could engage in activities for 8 hours. (Tr. 326). Plaintiff reported that she could "maybe" lift 20 pounds. (Tr. 328). She testified that she did not experience any difficulties using her upper extremities to perform pushing or pulling activities. (Tr. 328). Plaintiff reported that she can climb a flight of stairs and experienced no difficulty operating foot controls. (Tr. 328). Plaintiff reported that she can bend at the waist and bend at the knees "once in a while." (Tr. 329).

Plaintiff reported that she drives, cooks, shops, washes laundry, and makes the bed. (Tr. 331-32). She reported that she also attends the games in which her daughter performs as a cheerleader. (Tr. 334).

## **ANALYSIS OF THE ALJ'S DECISION**

**A. Applicable Standards**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

**B.  The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine, (2) hypertension, (3) bipolar disorder, (4) obesity, and (5) marijuana abuse. (Tr. 15).  The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-18).  The ALJ concluded that Plaintiff was able to perform her past relevant work as an assembler and, furthermore, was able to perform other work that exists in significant numbers.  (Tr. 22-23).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1.  The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

---

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[2] subject to the following limitations: (1) she can lift and carry 10 pounds and can occasionally lift and carry 20 pounds, (2) she can occasionally reach, stoop, climb, crouch, and crawl, (3) she cannot work at unprotected heights or near dangerous machinery, (4) she can perform only unskilled work with simple, routine tasks involving no more than simple work-related decisions with few workplace changes, (5) she cannot interact with the general public, and (6) she can occasionally interact with supervisors and co-workers. (Tr. 19). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

At the administrative hearing, a vocational expert testified that if limited to the extent reflected by the ALJ's RFC determination, Plaintiff was still capable of performing her past relevant

---

[2] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983).

work as an assembler. (Tr. 345-46). The vocational expert further testified that there existed approximately 16,000 additional jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 345-47). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

Based on this testimony, the ALJ determined that Plaintiff retained the ability to perform her past relevant work as an assembler. The ALJ further determined that there existed a significant number of jobs in the national economy which Plaintiff could perform, her limitations notwithstanding. Accordingly, the ALJ concluded that Plaintiff was not disabled.

a. The ALJ Properly Evaluated Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that she experiences severe back pain, which she rated as 9 (on a scale of 1-10). (Tr. 316). Plaintiff also testified that she was unable to work because she would be absent "a couple days a week" due to her pain. (Tr. 338-39). The ALJ discounted Plaintiff's subjective allegations, finding that Plaintiff "is not credible about the extent of her back limitations." (Tr. 19). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a

claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at \*6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at \*6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such

evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly concluded, Plaintiff's subjective allegations of extreme pain and limitation are contradicted by the observations and conclusions of Plaintiff's treating physicians, the objective medical evidence, and Plaintiff's reported activities. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

b.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations. In response, the vocational expert testified that if limited to the extent reflected by the ALJ's RFC determination, Plaintiff was still capable of performing her past relevant work as an assembler. The vocational expert further testified that there existed approximately 16,000 additional jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: April 21, 2009  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge