UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CHARITY M. BAILEY, | Case No. 1:08-cv-320 |
| Petitioner, | HONORABLE PAUL L. MALONEY |
| v. | Magistrate Judge Joseph G. Scoville |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent. | |

**OPINION and ORDER**

**Overruling the Plaintiff's Objections and Adopting the R&R;**
**Affirming the Commissioner's Denial of Disability Benefits;**
**Terminating and Closing the Case**

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIvR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on April 21, 2009. Plaintiff Charity Bailey ("Bailey") filed timely objections on April 29, 2009,[1] and as ordered the defendant Commissioner of Social Security ("Commissioner") filed a response to those objections on May 26, 2009. The objection is

_____

[1] After being served with an R&R, parties have ten days to file objections. *Heggie v. MDOC*, 2009 WL 36612, *1 (W.D. Mich. Jan. 5, 2009) (Maloney, C.J.) (citing 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72 and W.D. MICH. LCIvR 72.3(b)). The ten days did not start until the day after the parties were served, and weekends and federal holidays are excluded. *Heggie*, 2009 WL 36612 at *1 (citing FED. R. CIV. P. 6(a)(1) (when calculating a time period, the period does not begin until the day after the event that triggers the right or obligation) and FED. R. CIV. P. 6(a)(2) (when calculating a time period shorter than eleven days, the court must exclude weekends and holidays)).

sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which Ms. Bailey has objected.[2]

**The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objection.** For the reasons explained by the R&R, Bailey's back problems (degenerative disease of the lumbar spine), hypertension (high blood pressure), bipolar disorder, obesity, and marijuana abuse did not render her disabled from her date last insured (October 10, 2001) through the date of her application (May 1, 2006), when she was 30 to 35 years of age.

This court agrees with the Magistrate that substantial evidence supported the ALJ's determination that Bailey was able to perform her past relevant work as an assembler, as well as other suitable work that exists in significant numbers. Specifically, substantial evidence supported the underlying finding that Bailey had the RFC to perform light work, as defined by 20 C.F.R. § 404.1567, subject to these limitations: lifting and carrying no more than ten pounds and no more than 20 pounds occasionally; only occasionally reaching, stooping, climbing, crouching or crawling; no work at unprotected heights or near dangerous machinery; only unskilled work with simple, routine tasks involving only simple work-related decisions with few workplace changes; no interaction with the general public; and only occasional interaction with co-workers or supervisors. *See* R&R at 10.

---

[2]

"'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider"))

The medical record begins with a November 2001 MRI[3] of the lumbar spine, which revealed bilateral spondylosis[4] at lumbar vertebra L5, with spondylothesis[5] of L5 over sacral vertebra S1, but no compression deformity, signal abnormality, herniation (abnormal protrusion)[6], or "significant" stenosis (narrowing of the spinal canal).[7] *See* R&R at 4 (citing Tr 228).  November 2001 treatment

---

[3]

MRI stands for magnetic resonance imaging, which is

a non-ionizing (non-x-ray) technique using magnetic fields and radio frequency waves to visualize anatomic structures.  It is useful in detecting joint, tendon, and vertebral disorders.  The patient is positioned within a magnetic field as radio wave signals are conducted through the selected body part.  Energy is absorbed by tissues and then released.

*Kita v. SSA*, 2009 WL 1464252, *3 (W.D. Mich. May 18, 2009) (Maloney, C.J.) (quoting *Pethers v. SSA*, 580 F. Supp.2d 572, 575 n.3 (W.D. Mich. 2008) (quoting STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006) ("STEDMAN'S") at B13)).

[4]

"Spondylosis is an ankylosis (stiffening or fixation) of the vertebra, often used to refer to any degenerative spinal lesion."  *Wical v. Int'l Paper Long-Term Disability Plan*, 191 F. App'x 360, 364 n.4 (6th Cir. 2006) (p.c.) (C.J. Boggs, Gibbons, <u>Griffin</u>) (citing STEDMAN'S 95 and 813).  *See also Anderson v. Astrue*, 2009 WL 32935, *7 n.3 (E.D. Tenn. Jan. 6, 2009) ("Spondylosis is 'a general term for degenerative changes due to osteoarthritis.'") (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1684 (29th ed. 2000)).

[5]

"Spondylolisthesis is the 'forward displacement (olisthy) of one vertebra over another, usually of the fifth lumbar over the body of the sacrum, or of the fourth lumbar over the fifth.'"  *Warden v. Metropolitan Life Ins. Co.*, 574 F. Supp.2d 838, 842 n.2 (M.D. Tenn. 2008) (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1743 (30th ed. 2003)).

[6]STEDMAN'S 881 (herniation).

[7]

*Pethers v. SSA*, 580 F. Supp.2d 572, 576 n.6 (W.D. Mich. 2008) (citing STEDMAN'S 1832). *See also Anderson v. Astrue*, 2009 WL 32935, *7 n.3 (E.D. Tenn. Jan. 6, 2009) ("Spinal stenosis is 'narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space.'") (citing DORLAND'S 1698).  Lumbar stenosis can cause pseudoclaudication, or neurogenic claudication, i.e., limping. *Summeour v. Astrue*, 2008 WL 2357250, *5 n.3 (E.D. Tenn. June 3, 2008) (citing STEDMAN'S 360 (27th ed. 2000)).

notes described Bailey's back pain as better in the morning but less improved at night, noted that she was taking Tylenol, and instructed her to lose weight and exercise. *See* R&R at 4 (citing Tr 226). Bailey started physical therapy ("PT") at about this time and by December 26, 2001 she reported more flexibility and strength in her back and abdomen. *See* R&R at 4 (Tr 224). In January 2002 Bailey reported that although she regularly exercising and not routinely taking any medication, she was no longer able to work her current job because it required her to repeatedly lift 28 pounds. *See* R&R at 4 (citing Tr 224).

In March 2002 Dr. Moulton examined Bailey, who reported that she was suffering lower-back pain radiating into her lower left leg, and that such pain had been exacerbated by her prior job's requirement that she lift 14 pounds 700-800 times per day. *See* R&R at 4 (citing Tr 248-29). Bailey walked comfortably, was able to walk heel-to-toe, had negative straight leg raising,[8] 5/5 strength, a negative Babinski test,[9] and normal sensation in both lower extremities, but X-rays revealed

---

[8]

A straight leg raising test is "a physical examination technique to determine abnormality of the sciatic nerve or tightness of the hamstrings. The presence of sciatica is confirmed by sciatic nerve pain radiating down the limb when the supine person attempts to raise the straightened limb." *Bowerman v. Astrue*, 2008 WL 4105164, *7 n.16 (S.D. Tex. Sept. 2, 2008) (quoting Mosby's Medical, Nursing, and Allied Health Dictionary 161 (5th ed. 1998)).

[9]

"Babinski testing is designed to discern the presence of neurological damage in the brain and/or spinal cord.'" *Lopez v. SSA*, 2009 WL 261191, *5 (W.D. Mich. Feb. 4, 2009) (Maloney, C.J.) (quoting http://www.nlm.nih.gov/medlineplus/ency/article/ 003294.htm, retrieved Dec. 30, 2008). A Babinski reflex occurs when the big toe flexes toward the top of the foot and the other toes fan out after the sole is firmly stroked. *See* http://www.nlm.nih.gov/medlineplus/ency/article/003294.htm, retrieved June 1, 2009. "In people more than two years old, the presence of a Babinski's reflex indicates damage to the nerve paths connecting the spinal cord and the brain (the corticospinal tract). Because this tract is right-sided and left-sided, a Babinski's reflex can occur on one side or on both sides. An abnormal Babinski's reflex can be temporary or permanent." *Id.* Causes include, *inter alia*, amyotropic lateral sclerosis (Lou Gehrig's Disease), tumor in the corticospinal tract or cerebellum, meningitis, multiple sclerosis, poliomyelitis, and spinal cord injury. *Id. See also Monaco v. HHS*, 2006 WL 5606257,

spondylolisthesis at L5-S1 and spondylosis at L4-L5.  After instructing Bailey to lose weight and participate in PT , Dr. Moulton administered a nerve-root injection[10] later that month, leading Bailey to report "good pain relief" in April 2002, when he reiterated his advice to lose weight.  *See* R&R at 54-5 (citing Tr 159, 245, 249).  By July 2002 Dr. Moulton was reporting Bailey made "significant strides" losing weight and reducing her pain, but in October 2002 Bailey reported "significant" back pain that came and went, causing him to modify her medication.  *See* R&R at 5 (citing Tr 241).

The medical record discussed contains a 3.5-year gap between late 2002 and early 2006. Bailey concedes that her "only back treatment since 2003 has been pain medication and [non-prescribed] marijuana for pain."  Plaintiff Charity Bailey's Objections to the R&R, filed April 29, 2009 ("P's Objections")  at 2 (citing Tr 318, 320 and 326).  Bailey also seems to concede that she failed to lose enough weight for Dr. Moulton to conclude that back surgery was appropriate, as he had told her that such surgery was conditioned on her losing weight.  *See* P's Objections at 2 ("Dr. Moulton recommended back surgery, but would not perform same unless plaintiff lost weight. *Consequently*, plaintiff's only back treatment since 2003 has been . . . .") (italics added).

In March 2006, Bailey's husband took her to the ER because she was very paranoid and had

---

*5 n.6 (Fed. Cl. Dec. 8, 2006) ("Babinski's reflex is . . . 'a sign of a lesion in the central nervous system, particularly in the pyramidal tract.'") (citing DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1600 (30th ed. 2003)).

[10]

A nerve root injection helps to determine which nerve is responsible for leg or arm pain, and possibly to decrease the pain caused by an inflamed nerve.  *See* http://www.emoryhealthcare.org/departments/spine/services/nerve_root.html (Emory University Spine Center), retrieved June 1, 2009.  Using flouroscopy (x-ray guidance), a very small needle is placed into the nerve root sheath (the layer of tissue that surrounds the nerve).  Next, the doctor injects a small amount of dye to verify correct placement of the needle, then he injects a local anesthetic and, in some cases, a small amount of steroid to prolong pain relief.  *Id.*

made "abnormal" comments; she reported daily marijuana use and expressed fear that she had

smoked marijuana laced with another drug.  Her drug screen was positive for cannabinoids and

benzodiazepine.[11] Tr 193.  After observing Bailey's "somewhat flat" affect, noting that she was not

obviously paranoid, administering a Global Assessment of Functioning ("GAF") test which yielded

a score of 50[12], and seeing a negative CT scan of Bailey's head, an ER physician diagnosed her with

bipolar disorder - manic phase.[13]  *See* R&R at 5 (citing Tr 162-72 and 184).  Bailey was released on

---

[11]

Benzodiazepines – e.g., Valium (diazepam), Ativan (lorazepam), Klonopin (clonazepam), Librium (chlordiazepoxide hydrochloride), Dalmane, Tranxene, and Xanax (alprazolam) – are "a family of psychoactive compounds used to treat anti-anxiety disorders.  [They are] highly addictive drugs that commonly interfere with memory, ability to concentrate, and intellectual function." *McMurtrey v. Ryan*, 539 F.3d 1112, 1124 n.15 (9th Cir. 2008) (citing STEDMAN'S 198 (26th ed. 1995)).  *See also Clement v. US*, 772 F. Supp. 20, 28 (D. Me. 1991) ("'Particularly addiction-prone individuals (such as drug addicts of alcoholics) should be under careful surveillance when receiving diaz[e]pam [Valium] or other psychotropic agents because of the predisposition of such patients to habituation and dependence.'") (quoting PHYSICIANS DESK REFERENCE 1699 (41st ed. 1987)), *aff'd*, 980 F.2d 48 (1st Cir. 1992).

[12]

A GAF score refers to a clinician's judgment of the person's overall level of functioning, and a score of 50 indicates that the person is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning."  *Hengesbach v. SSA*, 2009 WL 1230414, *7 n.2 (W.D. Mich. Apr. 30, 2009) (Maloney, C.J.) (citing American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 1994) ("DSM-IV") 32 and 34).

The ALJ was not required to put any stock in Bailey's GAF scores.  *Kornecky v. SSA*, 167 F. App'x 496, 511 (6th Cir. 2006) (citing *Howard v. SSA*, 276 F.3d 235, 241 (6th Cir. 2002)).  "As the Sixth Circuit has recognized, a GAF score 'may help an ALJ assess mental RFC, but it is not raw medical data.'"  *Hengesbach*, 2009 WL 1230414 at *8 (quoting *Kornecky*, 167 F. App'x at 503 n.7).  The Social Security Administration has refused to endorse the use of the GAF scale for use in the Social Security and SSI disability programs, cautioning that the scale "does not have a direct correlation to the severity requirements in our mental disorder listings."  *Ackermann-Papp v. SSA*, 2008 WL 314682, *3 (W.D. Mich. Feb. 4, 2008) (Maloney, J.) (citing *DeBoard v. SSA*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting REV. MED. CRITERIA FOR EVALUATING MENTAL DISORDERS AND TRAUMATIC BRAIN INJURY, 2000 WL 1173632, 65 FED. REG. 50476, 50764-65 (Aug. 21, 2000))).

[13]

"Bipolar disorder is a mood disorder characterized by the occurrence of both manic and

6

March 2 but returned twice on March 3 and was admitted to the psychiatric unit, where she was diagnosed with bipolar disorder and kept until her discharge on March 21.  *See* P's Objections at 3 (citing Tr 161-62, 165, 168, 171, and 176).  Upon examination later that month (March 2006) by Dr. Vasquez, Bailey reported angry outbursts, anxiety, mood swings, difficulty concentrating, worry, and panic attacks, but less paranoia; her GAF score was down to 46, but she had an unremarkable result on a mental health exam, leading him to diagnose bipolar I disorder - depressed phase and adjust her medication.  *See* R&R at 6 (citing Tr 199-201).

Following an April 2001 examination at which Dr. Vasquez noted her lack of compliance with the prescribed medication regimen, Bailey refused his direction to stop smoking marijuana, and a May 2006 exam by Vasquez yielded another unremarkable mental-status result and Bailey's admission that she still was not taking her medications as instructed.  *See* R&R at 6 (citing Tr 189 & 268).  Another May 2006 exam yielded a GAF score again at 46 and an additional diagnosis of marijuana dependence in early partial remission.  *See* R&R at 5-6 (citing Tr 184).  One Joe DeLoach completed a psychiatric review technique form and a mental residual functional capacity ("RFC")

---

depressive episodes."  *Butler v. Apfel*, No. 97-36004, 189 F.3d 472, 1999 WL 595335, *2 n.8 (9th Cir. Aug. 9, 1999) (citing STEDMAN'S 460, 508 and 1061 (26th ed. 1995)); *see also In re Zyprexa Prods. Liab. Lit.*, 253 F.R.D. 69, 98 (E.D.N.Y. 2008) ("Bipolar disorder is a serious lifelong mental illness marked by dramatic shifts in mood, from abnormally elevated, expansive, or irritable mood to states of extreme sadness and hopelessness, often with periods of normal mood in between.") (citing National Institutes of Health - National Institute of Mental Health, http://www.nimh.nih.gov/health/publications/bipolar.cfm).

"'Bipolar disorder is further classified as *mixed* if manic and depressive episodes alternate every few days and otherwise as *manic* or *depressed* according to the type of the most recent episode.'"  *Popp v. Peake*, 2008 WL 5111486, *1 n.1 (Vet. App. Oct. 22, 2008) (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 492 (28th ed. 1994)).  In turn, mania is "an emotional disorder characterized by euphoria or irritability, increased psychomotor activity, rapid speech, flight of ideas, decreased need for sleep, distractibility, grandiosity, and poor judgment."  *Butler*, 1999 WL 595335 at *9 n.21 (citing STEDMAN'S 1061 (26th ed. 1995)).

form for Bailey in June 2006.  DeLoach opined that Bailey suffered from bipolar disorder and
generalized anxiety disorder[14] meeting the Part A criteria for two listed impairments (Section 12.04
Affective Disorder and 12.06 Anxiety Disorder) but not the Part B criteria, because she experienced
only mild restrictions in daily living activities, moderate difficulty in maintaining social functioning
and concentration/persistence/pace, and had had one or two episodes of decompensation.[15]  The most

---

[14]

"One authoritative source sets out six criteria for diagnosing GAD:

'The essential feature of Generalized Anxiety Disorder is excessive anxiety and
worry (apprehensive expectation), occurring more days than not for a period of at
least 6 months, about a number of events or activities.  (Criterion A).  The individual
finds it difficult to control the worry.  (Criterion B).  The anxiety and worry are
accompanied by at least three additional symptoms from a list that includes
restlessness, being easily fatigued, difficulty concentrating, irritability, muscle
tension, and disturbed sleep . . . .  (Criterion C).

The focus of the anxiety and worry is not confined to features of another Axis I
disorder such as . . . Panic Disorder . . . Social Phobia . . . Obsessive-Compulsive
Disorder . . . and the anxiety and worry do not occur exclusively during
Posttraumatic Stress Disorder (Criterion D).  Although individuals with [GAD] may
not always identify the worries as "excessive", they report subjective distress due to
constant worry, have difficulty controlling the worry, or experience related
impairment in social, occupational, or other important areas of functioning (Criterion
E).  the disturbance is not due to the direct physiological effects of a substance (i.e.,
a drug of abuse, a medication, or toxin exposure) or a general medical condition and
it does not occur exclusively during a Mood Disorder, a Psychotic Disorder, or a
Pervasive Developmental Disorder (Criterion F).'"

*Kornecky*, 167 F. App'x at 502 n.4 (Griffin, J.) (quoting DSM-IV-TR at 472-73) (¶ break added).

[15]

As our Circuit has explained,

Decompensation is "[t]he appearance or exacerbation of a mental disorder due to
failure of defense mechanisms."  STEDMAN'S MEDICAL DICTIONARY 462 (27th ed.
2000) . . . .  The regulations provide, "Episodes of decompensation are exacerbations
or temporary increases in symptoms or signs accompanied by a loss of adaptive
functioning, as manifested by difficulties in . . . maintaining concentration,
persistence, or pace."  20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00(C)(4).

recent discussed items in the medical record are two reports from September 2006:  Dr. Vasquez's examination report stating that Bailey reported better sleep without side effects from her medication, had a normal mental-status exam, and exhibited mild depression, and Bailey's own Daily Activities Questionnaire reporting that she helped her children prepare for school, cooked, shopped, read, decorated cakes, watched television, and attended sporting events.  R&R at 7 (citing Tr 141-46 and 266).  Also in September 2006, Bailey reported that she napped during the day and did not socialize. *See* P's Objections (citing Tr 141, 143 and 145).

At Bailey's October 2006 hearing before the ALJ, she testified that she was experiencing severe back pain (9 on a scale of 1-10) but that she was taking her pain medication perhaps once a week, "if that" – smoking marijuana for pain relief instead – and never told her doctor that her prescribed pain medication was not working.  *See* R&R at 7-8 (citing Tr 316-322).  Bailey testified that she drove, cooked, shopped, washed laundry, made the bed, and attended sporting events; that she could walk 1-2 blocks, sit for about an hour, lift "maybe" 20 pounds but not 30 pounds, climb a flight of stairs, operate foot controls, bend at the waist and knees "once in a while"; and that she

---

The Railroad Retirement Act regulations provide a useful explanation of how decompensation manifests itself in the work setting.  In the workplace, decompensation manifests as "a repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs or symptoms . . . with an accompanying difficulty in maintaining . . . concentration, persistence, or pace (i.e., deterioration which may include deterioration of adaptive behaviors).  Stresses common to the work environment include decisions, attendance, schedules, completing tasks, interactions with supervisors, interactions with peers, etc."  20 C.F.R., pt. 220, app. 1, § 12.00(C)(4).

*Kornecky v. SSA*, 167 F. App'x 496, 499 n.3 (6th Cir. 2006) (p.c.) (Siler, Griffin, N.D. Ohio D.J. Katz).  *See also Lee v. Astrue*, 2009 WL 693156, *12 n.24 (M.D. Tenn. Mar. 13, 2009) ("Decompensation is the 'failure of defense mechanisms resulting in progressive personality disintegration.'") (quoting DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 437 (27th ed. 1988)).

could engage in an activity for 8 hours if permitted to sit or stand as needed. *See* R&R at 8 and P's Objections at 4-5 (both citing Tr 326-329). Finally, Bailey emphasizes her testimony that she has trouble sleeping at night, goes back to sleep after getting her children to school in the morning, and has her children do the housecleaning. *See* P's Objections at 5 (citing Tr 323, 332 and 335).

**Bailey's first objection is that the Magistrate should have recognized the ALJ's commission of reversible legal error in his assessment of her credibility. The court rejects this objection.** Declining to credit Bailey's testimony that she experienced severe back pain ("9 on a scale of 1 to 10"), the ALJ applied the so-called *Duncan* standard, which directs the court to consider (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition and (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain. *See* R&R at 12 (quoting *Walters v. SSA*, 127 F.3d 525, 531 (6th Cir. 1997) and citing *Workman v. SSA*, 2004 WL 1745782, *6 (6th Cir. July 29, 1994)).

Contrary to Bailey's assertions, *see* P's Objections at 8-9, our Circuit continues to follow the *Duncan* standard when determining whether substantial evidence supported an ALJ's decision to fully or partially reject a claimant's allegation of disabling pain. "In this circuit, complaints of pain are evaluated pursuant to *Duncan* . . . ." *Bell v. Barnhart*, 148 F. App'x 277, 285 (6th Cir. 2005) (C.J. Boggs, Gibbons, W.D. Mich. D.J. Gordon Quist). *See also Pasco v. SSA*, 137 F. App'x 828, 834 (6th Cir. 2005) (Siler, Rogers, E.D. Ky. D.J. Karen Caldwell) ("This Circuit set forth the standard for evaluating subjective complaints of pain or limitations in *Duncan* . . . ."), *reh'g en banc denied* (6th Cir. Oct. 20, 2005); *Barnett v. SSA*, 76 F. App'x 713, 716 (6th Cir. 2003) (p.c.) (Boggs,

Norris, Clay).[16]  The Sixth Circuit has reaffirmed the continuing vitality of the *Duncan* standard in

*published* decisions, as well, so this court has no authority or discretion to disturb the ALJ's decision

or reject Magistrate Judge's R&R merely because they followed *Duncan*.  *See Buxton v. Halter*, 246

F.3d 762, 773 (6th Cir. 2001) ("The standard for evaluating subjective complaints of pain was set

forth by the Sixth Circuit in *Duncan* . . . ."); *McCormick v. HHS*, 861 F.2d 998, 1002-1003 (6th Cir.

1988).  Accordingly, the ALJ applied the governing legal standard when he subjected Bailey's

claims of disabling pain to the *Duncan* criteria, and the Magistrate Judge did not err in sustaining

the ALJ's legal/factual determination that those claims "are contradicted by the observations and

conclusions of Plaintiff's treating physicians, the objective medical evidence, and Plaintiff's

reported activities", R&R at 13.

**Bailey's second objection is that the Magistrate Judge committed legal error by**
**asserting that the mere existence of substantial evidence supporting the magistrate's**
**credibility determination makes such determinations conclusive",** P's Objections at 9, because

that view ignores the rule that the ALJ must give reasons for his credibility findings, *id.* (citing

*Rogers v. SSA*, 486 F.3d 234, 248 (6th Cir. 2007)).  Bailey relies on the related rule that "'an

---

[16]

*See, e.g.,* applying *Duncan* standard to post-1987 claimant-credibility assessments:

*Vance v. SSA*, 260 F. App'x 801, 806-07 (6th Cir. 2008) (Guy, Gilman, <u>McKeague</u>);
*Sullenger v. SSA*, 255 F. App'x 988, 995 (6th Cir. 2007) (<u>Batchelder</u>, Gilman, D.J. Stafford);

*Kita v. SSA*, 2009 WL 1464252, *14-15 (W.D. Mich. May 18, 2009) (Maloney, C.J.) ("With
respect to the period prior to May 30, 2006, the ALJ correctly discounted Plaintiff's subjective
allegations because they were inconsistent with Plaintiff's performance during physical
examinations, the results of objective medical testing, and Plaintiff's reported activities.");

("[T]he Sixth Circuit has since held that *Duncan* continues to apply to determinations made
after 1987.") (citing *Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994)).

agency's action must be upheld, if at all, on the basis [actually] articulated by the agency itself'",
P's Objections at 10 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S.
29, 50 (1983)) (Bailey's footnote 2 omitted).  Bailey asserts, "[T]he magistrate posed the wrong
question.  The question is not whether the record contains substantial evidence impugning the
claimant's credibility[, but] whether the reasons *given by the ALJ* disclose an *inconsistency* between
the claimant's reported symptoms and other substantial evidence."  P's Objections at 10.  As the
Commissioner points out, Bailey's second objection misconstrues the SSA's regulations and rulings
regarding the assessment of subjective complaints of pain.

Consistent with the regulations, a long-standing SSA Ruling leaves no doubt that ALJs are
not only permitted, but required, to consider these very types of evidence:

> In recognition of the fact that an individual's symptoms can sometimes suggest a
> greater level of severity of impairment that can be shown by the objective medical
> evidence alone, *29 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of
> evidence*, including the factors below, *that the adjudicator must consider in addition
> to the objective medical evidence when assessing the credibility of an individual's
> statements:*

> 1.    *The individual's daily activities;*

> 2.    The location, duration, frequency, and intensity of the individual's pain or
>        other symptoms;

> 3.    Factors that precipitate and aggravate the symptoms;

> 4.    The type, dosage, effectiveness, and side effects of any medication [which]
>        the individual takes or has taken to alleviate pain or other symptoms;

> 5.    *Treatment, other than medication, [which] the individual receives or has
>        received for relief of pain or other symptoms*;

> 6.    Any measures other than treatment the individual uses or has used to relieve
>        pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to
>        20 minutes every hour, or sleeping on a board); and

     7.    *Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.*

Social Security Ruling ("SSR") 96-7p, "Policy Interpretation Ruling [sic] Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements", 1996 WL 374186, *3 (1996) (emphasis added).[17]  For one thing, as the Commissioner points out (Response at 3 (citing Tr 18)), the ALJ properly found it significant that Bailey's treating physician included posture restrictions in his physical RFC opinion but imposed no such restrictions on her walking, standing or sitting.  In addition, the ALJ had the right to ascribe significance to the fact that Bailey was admittedly able to engage in a range of daily activities which, while not necessarily equivalent to work, tended to undermine the premise that her pain was quite so severe and disabling as she alleged.  *See Roby v. SSA*, 48 F. App'x 532, 537 (6th Cir. 2002) (Guy,

---

[17]

    "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'" *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990) (quoting 20 C.F.R. § 422.408 (1989) and citing *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984)); *accord Evans v. SSA*, – F. App'x –, –, 2009 WL 784273, *2 (9th Cir. Mar. 25, 2009) ("'Federal statutes, administrative regulations and Social Security Rulings together form a comprehensive scheme of legal standards that ALJs must follow in determining whether a claimant is entitled to disability benefits.'") (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990)); *see also* 20 C.F.R. § 402.35(b)(2) (2009) (to same effect).

    SSRs do not have the force of law vis-a-vis the courts; "[a]s the agency's interpretation of its own regulations, however, a SSR 'is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation.'" *Kornecky v. SSA*, 167 F. App'x 496, 498 (6th Cir. 2006) (p.c.) (Siler, <u>Griffin</u>, Katz) (quoting *Wilson v. SSA*, 378 F.3d 541, 549 (6th Cir. 2004)).

    This does not mean that an ALJ must refer with specificity to SSRs in his decision, *McClanahan v. SSA*, 474 F.3d 830, 834 (6th Cir. 2006) (McKeague, J.), but the ALJ should articulate his reasoning so that a reviewing court can ascertain whether it complies with applicable SSRs. *See, e.g., Holliman v. SSA*, 2008 WL 4181136, *5 (W.D. Mich. Sept. 3, 2008) (Jonker, J.) ("While it appears that the ALJ agreed with the state agency physician's opinions, he failed to explain the weight given to those opinions pursuant to SSR 96-6p. * * * Accordingly . . . this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).").

Batchelder, W.D. Mich. D.J. Quist) ("Roby argues that the ALJ incorrectly determined that his and his wife's testimony regarding his limitations, including such things as dizziness and the need to kneel, was overstated . . . .  * * *  [T]he ALJ's findings were supported by substantial evidence in the record.  The ALJ considered Roby's testimony concerning his limitations in light of medical evidence *as well as other evidence that Roby drives a car, mows his lawn, and regularly goes fishing.*"); *Malone v. SSA*, No. 94-6545, 69 F.3d 537, 1995 WL 641280, *2 (6th Cir. Oct. 31, 1995) (noting with approval, "The district court also found that the [ALJ] could have found that . . . Malone's son's testimony was inconsistent with Malone's own reports . . . concerning her daily activities.").[18]

**Moreover, the record before the ALJ showed that after March 2002, Bailey reported improvement following nerve-root injection, did not receive any additional injections of that or similar type, and her treatment did not change significantly.**  *See* Commissioner's Response

---

[18]

*See also Potter v. SSA*, 223 F. App'x 458, 461-62 (6th Cir. 2007) (Cook, <u>Rogers</u>, N.D. Ohio D.J. O'Malley) (affirming denial of benefits where ALJ "did not find Potter's allegations credible as to the extent [to which] she was precluded from 'performing exertional work-related activities,' because those allegations were inconsistent with Potter's description of her daily activities.");

*Griffeth v. SSA*, 217 F. App'x 425, 427-28 (6th Cir. 2007) (Moore, Clay, <u>W.D. Mich. Chief D.J. Bell</u>) (substantial evidence supported ALJ's determination that depression did not render claimant disabled, including evidence that claimant was able to participate in daily activities such as cooking, visiting friends, fishing, helping friends with projects, working in his wood-working shop, mowing his lawn, attending church, riding a motorcycle, and doing minor maintenance on his apartment building);

*McKenzie v. SSA*, No. 99-3400, 215 F.3d 1327, 2000 WL 687680, *2-4 (6th Cir. May 19, 2000) (Jones, Batchelder, <u>Clay</u>) ("[W]e believe the ALJ reasonably evaluated Plaintiff's credibility with respect to his [RFC] given the lack of aggressive treatment, plaintiff's daily activities, and the record inconsistencies.").

14

at 3 (citing Tr 19-20).  The ALJ was entitled to consider this arguable inconsistency under SSR 96-

7p's section on Medical Treatment History, which provides,

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities to attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.
>
> *On the other hand, the individual's statement may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.*

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added).  Bailey's acknowledged conduct during the

insured period gave the ALJ two potentially powerful reasons to at least partially discount her claims

about the degree of pain she experienced and the limitations it imposed:  her treatment was arguably

inconsistent with her complaints, such as the discontinuation of nerve-root or similar painkilling

injections and the absence of increased, intensified or different treatments.  *See, e.g., Craig v.

Chater*, 943 F. Supp. 1184, 1190 (W.D. Mo. 1996) ("Plaintiff's wife testified on his behalf regarding

the duration, frequency, and intensity of his pain and other subjective complaints.  * * *  *The ALJ

. . . found it not credible because it was inconsistent with* the medical evidence, *plaintiff's minimal

medical treatment, and the reports of treating and examining physicians*.") (emphasis added);

*Manella v. Astrue*, 2008 WL 2428869, *3 (D. Ariz. June 12, 2008) ("The Court finds that the ALJ's

analysis of Mannella's credibility is supported by substantial evidence in the record.  * * *  Manella

takes ibuprofen a couple of times a week and an occasional Darvocet but does not currently use any

stronger type of pain medication.  Occasional use of an over-the-counter pain reliever and infrequent

use of a prescribed narcotic in addition to herbal remedies is not indicative of disabling pain.")

(citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

**Next, Bailey unjustifiably failed or refused to follow the treatment and healthy conduct prescribed.** Bailey herself told a physician that she was not taking her medications on the prescribed schedule (sometimes rarely taking it at all), the record is at best unclear as to whether she lost sufficient weight and maintained that weight loss, and she expressly refused her doctor's advice to stop smoking marijuana. Bailey did not give, and has not given, legitimate reasons for this lack of cooperation and effort towards compliance with the prescribed regimen. *See* 20 C.F.R. § 404.1530(c) (giving examples of "Acceptable reasons for failure to follow prescribed treatment").

The ALJ was legally entitled to draw the adverse inference that Bailey's physical pain, mental condition, and resultant limitations were not as severe or disabling as she alleged. *See Nagle v. SSA*, No. 98-3894, 191 F.3d 452, 1999 WL 777355, *1 (6th Cir. Sept. 21, 1999) ("Nagle's testimony regarding his . . . use of pain medication belies his claim of disabling pain. * * * Nagle . . . stated that . . . he did not take the medication as prescribed because he did not want to become dependent upon the drugs. Her stated that he was never completely pain free and that he took medication on his bad days. The internal inconsistencies regarding Nagle's pain levels household activities, and relief through medication were properly resolved by the Commissioner and cannot be disturbed."); *Peters v. HHS*, No. 82-1556, 755 F.2d 933, 1985 WL 12822, *2 (6th Cir. Jan. 1, 1995) (affirming decision where ALJ stated, "*while it may be concluded that the claimant does experience some pain and discomfort related to his impairments* [chronic back pain, degenerative joint disease, and fibromyositis], *the minimal pain medication* and lack of clinical signs and laboratory tests, *all show that it is not of sufficient intensity, persistence or frequency to preclude the claimant having [RFC] for sedentary work*.") (emphasis added); *Holland v. SSA*, 528 F. Supp.2d

16

728, 730 n.3 (W.D. Mich. 2007) (Maloney, J.) ("Perhaps most significantly, Holland claimed that she was experiencing joint pain, but she told Dr. Solarewicz that she was not taking any pain medication.  The ALJ was entitled to construe Holland's failure to take pain medication as inconsistent with her claim that her condition caused such pain and limitations as to prevent her from doing the very limited things needed for sedentary work.") (n. 3 omitted).[19]

Thus, the partial rejection of Bailey's pain allegations rested not on some "intangible or intuitive notion about [her] credibility," but on an articulated consideration of evidence "sufficiently specific to make clear" to Bailey "and to any subsequent reviewers the weight the adjudicator gave to [her] statements and the reasons for that weight", SSR 96-7p, 1996 WL 374186 at *4.

As the Magistrate recognized, R&R at 12-13 (citing, *inter alia*, *Heston v. SSA*, 245 F.3d 528, 536 (6th Cir. 2001)), "'[a]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" *Allen v. SSA*, 561 F.3d 646, 652 (6th Cir. 2009) (Rogers, joined by Gilman) (quoting *Walters v. SSA*, 127 F.3d 525, 531 (6th Cir. 1997)).  Having failed to show that the ALJ applied the wrong legal standard for assessing subjective claims regarding pain, Bailey also fails to undermine the conclusion that substantial evidence supported the ALJ's assessment that those claims were not entirely credible in light of their arguable inconsistency with

---

[19]

*See also Lawson v. SSA*, 192 F. App'x 521, 527-28 (6th Cir. 2006) (Moore, Gibbons, <u>D.J. Ackerman</u>) (affirming denial of disability benefits where "the ALJ held that 'Lawson's credibility with respect to her symptoms and impairments is significantly diminished by her failure to follow-up with recommendations of treating physicians to seek psychiatric or mental health treatment, failure to take medications as prescribed . . . .'");

*Hall-Thulin v. SSA*, No. 96-1940, 110 F.3d 64, 1997 WL 144237, *1 (6th Cir. May 27, 1997) (p.c.) (Lively, Nelson, Moore) ("In order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician.") (citing 20 C.F.R. § 404.1530(a)).

her self-reported daily activities, the treatment which she received (and did *not* receive), and the restrictions which physicians placed (and did *not* place) on her.  *See* SSR 96-7p, 1996 WL 374186 at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

**To the extent that Bailey believes the ALJ should have more thoroughly discussed his consideration of the evidence indirectly bearing on his credibility, her objection fails.**  The ALJ summarized the evidence and articulated his reasoning enough to satisfy the requirements of the regulations, case law, and SSR 96-7p.  Reversal is inappropriate in the face of the substantial evidence supporting the ALJ's conclusion and stated reasoning, and "remanding for an opinion that more fully recites the ALJ's consideration of every issue" and each piece of evidence, reaching the same result, "'would be an idle and useless formality.'"  *Wilson v. SSA*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n6 (1969)).  *See also Kobetic v. SSA*, 114 F. App'x 171, 173 (6th Cir. 2004) (Sutton, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand would lead to a different result.") (citation and quotation marks omitted); *cf., e.g., Lyons v. SSA*, 2008 WL 4057858, *4 (W.D. Mich. Aug. 28, 2008) (Maloney, C.J.) ("There is no need to remand to the agency . . . for an explicit discussion of whether the evidence meets or equals the mental retardation listing in section 12.05(C).").

**Finally, Bailey objects that the ALJ mischaracterized her testimony**:

If one read only the ALJ's decision, one would think that he found an inconsistency on which to hang his hat: "when not being led in questioning by her representative, the claimant testified that she could engage in sit/stand activity for eight hours per day and five days per week 'if she had to'" (20).  Here is what the testimony *actually*

18

was:

Q       If we had to have a whole week of hearings for eight hours a day, but you
        could sit or stand as you needed to, could you do that?

A       If I absolutely had to, I guess I'd make a way, *but I think it would cause me
        quite a bit of pain* (327; emphasis added).

Twisting testimony that the claimant can do an activity *with pain* into an admission
that the claimant can do the activity, period, is a material mischaracterization of the
record, which is reversible error.

P's Objections at 12-13 (citation to two E.D. Mich. decisions omitted).  Citing *Walston v. Gardner*,

381 F.3d 580, 586 (6th Cir. 1967), Bailey states, "Ability to work is based on what a person can do

*without symptoms*, not work that can be done *only in pain*."  P's Objections at 13 (emphasis in

original).  This objection lacks merit as well.  Most significant, *Walston* does not stand for the broad

proposition that one is not able to work unless one can work without pain.  That was a careless, if

not misleading, reading of *Walston*.  What our circuit said on the cited page of *Walston* was only that

"A man is disabled within the meaning of the Act, if he can engage in substantial gainful activity

only by enduring *great* pain."  *Walston*, 381 F.2d at 586 (emphasis added) (citing *Miracle v.

Celebrezze*, 351 F.2d 361 (6th Cir. 1965)).[20]  Bailey has not shown the lack of substantial evidence

_____

[20]

    Bailey neglects to mention that the medical record regarding the degree and effect of the
claimant's pain in *Walston* was very different from the record in our case:

        The appellant testified that he suffered intense pain with movement.  This testimony
        was confirmed by every doctor who examined him.  Appellant cannot sit for more
        than five minutes.  Since 1961 he has had to walk with a cane, and the farthest he can
        walk is around the block.  The fact that appellant can still perform simple functions,
        such as driving, grocery shopping, dish washing and floor sweeping does not
        necessarily indicate that this appellant possesses an ability to engage in substantial
        gainful activity.  Such activity is intermittent and not continuous, and is done in spite
        of the pain suffered by appellant.  * * *  It appears that appellant was always
        conscious of ever present pain.  He states that he has not had a good night's sleep
        since the accident.  Any relief that he received from his visits to the chiropractor was

to support the ALJ's conclusion that she was able to work without suffering such "great pain."

Moreover, our Circuit has flatly stated, "We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled." *Quantu v. Barnhart*, 72 F. App'x 802, 811 (6th Cir. 2003); *see also Murphy v. HHS*, No. 83-5816, 765 F.2d 145, 1985 WL 13273, *4 (6th Cir. May 28, 1985) ("The factual determination as to whether appellant is able to work *despite his pain* is within the discretion of the ALJ.") (emphasis added).[21]

---

temporary and short-lived.

*Walston*, 381 F.2d at 586. Our Court of Appeals has never cited *Walston* for the "great pain" rule, and only three federal district courts have ever cited it on that score. *See Harrington v. Barnhart*, 2008 WL 2774480 (M.D. Tenn. July 16, 2008) (John Nixon, Senior D.J.):

> Although the plaintiff in *Walston* similarly testified that he suffered intense pain with movement, there, that testimony was confirmed by every doctor who examined him. * * * In this case, Plaintiff's complaints do not have the unanimous – or even significant – endorsement of the examining medical examiners [sic]. [Unlike] *Walston*, here the subjective complaints were deemed questionable in light of, not in *spite* of, the objective medical evidence.

*Id.* at *8. *See also Griffin v. SSA*, 2008 WL 2741810, *8 (E.D. Mich. July 11, 2008) (Friedman, J.) (in "*Walston*, the Sixth Circuit held that if daily activities are 'intermittent and not continuous, [and] are done in spite of the pain suffered', plaintiff's ability to do those activities does not mean plaintiff is not disabled where he 'can engage in substantial activity only by enduring great pain.'") (quoting *Walston*, 381 F.2d at 586) and *Zinis v. SSA*, 2009 WL 261474, *4 (E.D. Mich. Feb. 4, 2009) (Sean Cox, J.) (interpreting *Walston* in the same way).

[21]

See, *e.g.*, *Holland v. SSA*, 528 F. Supp.2d 728, 731 (W.D. Mich. 2007) (Maloney, J.) ("The record might support the conclusion that Holland could not perform her past relevant work during the insured period without experiencing pain or discomfort (say, from standing or walking), but that does not compel a determination that she was disabled.") (citing *Quantu*).

*Accord* **2nd Circuit,** *Cadet v. Apfel*, 2000 WL 337596, *5 (S.D.N.Y. Mar. 23, 2000) ("[T]here was substantial evidence to support the ALJ's finding that plaintiff's ulcer – *while painful* – did not limit plaintiff's ability to work.") (emphasis added);

**5th Circuit,** *Aragon v. Astrue*, 2008 WL 4367289, *4 (N.D. Tex. Sept. 24, 2008) ("[P]laintiff's ability to work, albeit in pain, belies the very assertion that he is precluded from

In other words, pain may or may not be disabling,[22] i.e., under appropriate circumstances a claimant will be denied disability benefits if there is substantial evidence that he can work despite the pain.  As out Circuit has explained,

> The plaintiff would seem to maintain that mere assertions of pain or dizziness, if supported in any fashion by objective medical evidence, should be considered as indicating a nonexertional limitation, precluding application of the grid.  This court has not adopted this position.  *Kimbrough* [*v. HHS*, 801 F.2d 794 (6th Cir. 1986)] at 796, 797.  The claim of nonexertional impairment must indicate a significant or severe limitation precluding the ability (in this case) to do sedentary work.  Pain can be disabling, but only if it is found to be a credible claim and if it establishes an inability to be gainfully employed.

> [footnote 2] A prior panel has determined that "we do not consider pain alone to be a nonexertional limitation that defeats the application of the grid . . . .  A nonexertional limitation must be severe enough to restrict a full range of gainful employment at the designated level."  *Marcano v. Secretary*, [No. 85-1734,] 812 F.2d 1407[, 1987 WL 36559, *5] (6th Cir. [Jan. 5,] 1987) (unpublished per curiam), citing *Kirk v. Secretary of HHS*, 667 F.2d 524, 538 (6th Cir. 1981).

*Cole v. HHS*, 820 F.2d 768, 772 (6th Cir. 1987).  Bailey has not shown a lack of substantial evidence to support the ALJ's conclusion that her actual pain level did not preclude her working, even if that might require her to work "with pain" to some degree.  *See, e.g., Mullen v. Bowen*, 800 F.2d 535,

---

working by his back pain."), *aff'd o.b.*, – F. App'x –, –, 2009 WL 1096471 (5th Cir. Apr. 23, 2009);

**7th Circuit,** *Thao v. Astrue*, 2008 WL 2937425, *3 (E.D. Wis. July 24, 2008) (affirming decision of ALJ who found that the claimant was not disabled even though he "retained the RFC for light work, *with pain* and diminished concentration that produced a moderate effect on his ability to perform work activities") (emphasis added);

**10th Circuit,** *Van Tassel v. Sullivan*, 781 F. Supp. 1535, 1538-39 (D. Colo. 1992) ("The court found that disability requires more than the mere inability to work without pain . . . .") (citing *Ray v. Bowen*, 865 F.2d 222, 226 (10th Cir. 1989)).

[22]*See, e.g., Horn v. HHS*, No. 84-3981, 780 F.2d 1021, 1985 WL 13951, *3 (6th Cir. Nov. 26, 1985) (p.c.) ("Although Horn worked with pain in the past, that is not evidence of present ability to work with pain.") (citations to 8th Circuit decisions omitted)

547 (6th Cir. 1986) ("The Appeals Council believes that the claimant does experience mild to moderate and perhaps even occasional severe pain as a result of his back condition and his esophaghitis. [T]he claimant's impairments prevent him from performing his usual heavy work in the cleaning department at a foundry.  However . . . the claimant, *in spite of his pain*, has the maximum sustained capacity to perform light work with no excessive bending.  * * *  The foregoing findings are supported by our own examination of the record."); *Gower v. Apfel*, 11 F. App'x 447, 450 (6th Cir. 2001) ( "*The VE opined that plaintiff would still be able to perform this work with mild to moderate pain*, but not with a more severe level of pain.") (emphasis added).

Because substantial evidence in the record supports the ALJ's determinations regarding the credibility of Bailey's allegations of pain and the disabling effects of that pain, Bailey fails to show that the ALJ erred in relying on those determinations in formulating hypothetical questions to the vocational expert.  *See* P's Objections at 13-14.

**ORDER**

Accordingly, having reviewed the complaint, the parties' briefs before the Magistrate Judge,

the R&R, the plaintiff's objections and the defendant's response, and the applicable law:

The plaintiff's objections [document # 17] are **OVERRULED**.

The R&R [document # 16] is **ADOPTED**.

The complaint is **DISMISSED**.

The Commissioner's denial of disability benefits is **AFFIRMED**.

This case is **TERMINATED** and **CLOSED**.

This is a final and appealable order.

**IT IS SO ORDERED** this   3rd   day of June 2009.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

23